Tillotson *against* The Hudson River Railroad Company.

signed like this note, because the other three had different signatures. If he considered himself legally responsible for the four notes shown him, because they had in fact been given in and about his business and for his benefit, as is most probable, that is a reason not applicable to the note in controversy.

The word " Churchman," then, represents in this case no person, but a thing, and is to be taken in its ordinary sense. The note was signed by the defendant as agent for a newspaper establishment known as " The Churchman," and it is well settled in such case that the words are to be taken only as *descriptio personæ*, and that the person signing is alone liable. (*Stone* v. *Wood*, 7 *Cow.*, 453; *Story on Agency*, §§ 147 *to* 159; *Story on Promissory Notes*, §§ 61 *to* 79; 8 *Cruise*, 31; 3 *Wend.*, 94; 7 *id.*, 68; 8 *id.*, 498; 10 *id.*, 271; 11 *Mass.*, 87; 4 *Comst.*, 208.)

Whether parol evidence could have been received to charge the defendant on a note upon which his name no where appeared (11 *Mass.*, 27, 33; 10 *Wend.*, 275) is not material, there being no such evidence in the case and none having been offered.

I think the judgment of the superior court should be affirmed, with costs.

The whole court concurring,

Judgment affirmed.

---

TILLOTSON *against* THE HUDSON RIVER RAILROAD COM-
PANY.

The defendants constructed their road across a deep bay upon the Hudson river, about nineteen hundred feet distant from and in front of the plaintiff's wharf, placing in their structure a sufficient draw, as required by the 15th section of the act incorporating them (*Laws of* 1846, 279); *Held*, that the

plaintiff's wharf was not "cut off" by the railroad, within the meaning of that section; and that an action would not lie to compel the defendants to extend the wharf across the line of the road, or to otherwise improve the same.

That the provision of that section requiring the defendants, in case any wharf or dock should be cut off by the railroad, to extend or so improve the same as to restore it to its former usefulness, was applicable only to wharves other than those within the bays, streams and inlets to which the defendants were required to furnish access by means of a draw.

THIS action was brought to compel the defendants to extend a wharf of the plaintiff, situated upon a bay of the Hudson river, across the line of the defendants' road, so as to give the plaintiff a river front upon his wharf outside of the railroad. The complaint avers the ownership by the plaintiff of a farm in Dutchess county, fronting on the Hudson river, and the erection of a wharf or dock in front thereof, which was used for commercial purposes; the incorporation of the defendants in 1846, and the location of the line of the road in 1848, partly on land in rear of the plaintiff's dock and partly on land under water in front of his farm, and the grant of the land covered by the dock to the plaintiff, in 1849, by the commissioners of the land office. The plaintiff then avers that in 1850 the defendants changed the location of their road from the line originally located to a line "crossing the bay at some distance in front of said dock, so as to cut off all navigation between the same and the waters of the Hudson river outside of the said railroad, and since that time, and during the summer of the year 1851, have constructed their road on said last mentioned line by a structure of pile bridging, entirely cutting off said dock from the navigable waters of said river, and leaving no access to or from the same except through a drawbridge, a passage sometimes difficult and dangerous, and always liable to be attended with delay and inconvenience." The plaintiff then avers that he laid out and constructed a road through his farm from the dock to the public highway in rear of the farm; and after setting

Tillotson *against* The Hudson River Railroad Company.

forth the 15th section of the defendants' charter, avers "that the only practicable improvement which will in any degree restore said dock to its former usefulness is its extension to such a reasonable distance beyond the outer line of said railroad, as to enable the plaintiff safely and conveniently to use the same outside of the said railroad, as he was before accustomed to do."

The defendants deny the erection of a dock by the plaintiff which was used for commercial purposes, and allege that if any erection of the kind was made by the plaintiff it " was for his private use and pleasure; the water in front for a great distance not being navigable at low tide for boats of any considerable draft, the same being situated in a deep bay about half a mile from the channel of the Hudson river, and no boats being accustomed to navigate the same for commercial purposes; and that such erection was in subordination to the rights of the people," and of the defendants to construct their road; and they deny that the public had a road or highway to said wharf. The defendants demur to the allegation of the complaint in respect to the change of the location of the line of the road and the effect of the structure in hindering access to the plaintiff's wharf. They deny that it is practicable to extend the wharf as claimed, or that they are bound to attempt it, "the railroad being out in the river near half a mile west of said plaintiff's pretended dock, and a good and complete drawbridge and equipment thereto being furnished and always ready to provide for any navigation by the several owners of farms living within said bay, and as is necessary to provide for the free passage of such vessels and boats as heretofore have or now can pass into and from the same;" and they annex a map of the premises to their answer. The plaintiff demurred to that part of the answer relating to the highway leading to the wharf, and also to that part last stated having reference to the practicability

of the extension of the dock, the furnishing a draw bridge, &c.

The demurrers were argued before Mr. Justice BARCULO, and judgment upon them for the defendants was affirmed at general term, in the second district. (15 *Barb.*, 406.) The plaintiff appealed to this court. The cause was submitted here on printed arguments, by

*G. Tillotson* for the appellant.

*Thomas H. North* for the respondents.

ALLEN, J., delivered the opinion of the court.

The parties have adopted an entirely novel and very questionable form of pleading in this action. The defendants have singled out parts of the complaint, which is entire, containing a statement of but one cause of action, and have demurred to isolated facts, and have answered the remaining allegations. The plaintiff, so far from objecting to this, has imitated the example, and in his turn demurred to certain facts alleged in the answer, and making parts of an entire defence. There is no authority for this practice. A demurrer can only be interposed to an entire cause of action, as alleged in the complaint, or to an entire defence, as put forth in the answer. But as the facts upon which the plaintiff founds his claim of right sufficiently appear from the statements, counter statements and admissions of the parties, the principal question may be properly decided upon this appeal.

The claim of the plaintiff is based upon the 15th section of the act incorporating the defendants ( *Laws of* 1846, *p.* 279 ), which is in these words : " The said corporation is authorized to build or erect a bridge over the Spuyten Duyvel creek and other navigable streams or inlets, for the passage of the said road or ways from or to the city of New-York. Such bridges shall be substantially constructed, and shall contain a draw of sufficient width to admit the passage

Tillotson *against* The Hudson River Railroad Company.   .

of vessels adapted to the navigation of said river, streams or inlets, with standing masts, and shall be so attended as not to obstruct, delay or hinder the progress of any vessel navigating said river. They are also required to construct such bridges as may be necessary to provide for the free passage of such vessels and boats as heretofore have or now can pass into and from the same (the bays that may be crossed by said railroad); and if any wharf or dock shall be cut off by the said railroad, the said company shall extend or so improve the same as to restore it to its former usefulness, so far as it may be practicable to do so. And the owner or owners thereof are hereby authorized to occupy the river front, outside of said railroad, for the erection and use of wharves or docks."

But for the authority conferred by the act the defendants would have had no right to bridge the navigable streams, inlets and bays mentioned, or do any act which would interfere with their navigation, or in any manner obstruct them as public highways. The charter contemplated the building of the road partly on the dry land and partly on the river flats, and across the navigable bays and inlets. It must have been foreseen by the legislature that the road thus located would unavoidably in some degree obstruct and impede the navigation of the bays and inlets which it might cross, and that the navigable intercourse between the shore and the channel would be cut off and closed, unless some duty was imposed upon the corporation to keep it open. The object of the 15th section of the statute was to protect that navigation, by requiring the corporation to do what was deemed by the legislature to be expedient and necessary for that purpose. It therefore provides for draw-bridges, of a proper width and construction to admit the passage of vessels adapted to the particular navigation at the points crossed, and that they shall be so attended as not to obstruct, delay or hinder the progress of such vessels.

The draw-bridges thus required to be constructed, maintained and attended are all the protection and facility afforded by the statute against the obstruction occasioned by the road in crossing the streams and inlets. The shores, wharves and vessels within the inlets have in this way, and in this way only, a navigable communication with the river. The word "inlet" seems to be used by the statute to denote the indentation in the shore, at the mouth or outlet of a navigable stream falling into the Hudson river, and the word "bay" to describe an indentation or curve where there is no such stream.

After providing for draws of a sufficient width to admit the passage of vessels adapted to the navigation of the river, streams or inlets, the corporation is required, by the section under consideration, to construct such bridges as may be necessary to provide for the free passage of such vessels and boats as "heretofore have or now can pass into and from the bays that may be crossed by said railroad."

There is no reason in the nature of things why the bays, or the wharves within the bays, should be more effectually guarded against obstruction than the inlets or the wharves within them. If any distinction in this respect should be made between them, it would seem that the inlets were entitled to the more careful protection, because in some instances at least they are navigable by larger vessels. The clause on which the plaintiff relies for the extension or improvement of his wharf, has clearly no application to wharves within the inlets. A careful reading of the statute authorizes the conclusion that the same measure of protection, and no greater, was intended for the bays as for the inlets; and that the draw-bridge was all that was intended for either. The plaintiff founds his claim upon the last clause of the section.

Bearing in mind that the corporation were authorized to occupy, for the purposes of their road, the river flats covered by water, and for that purpose to pass in front of docks and wharves not situated either within an inlet or a bay, we

are of the opinion that such clause was not intended to apply
to the inlets or bays, or to the wharves within either, but
to the wharves on the shore where there was neither bay nor
inlet.   The bays and inlets, and the wharves within them,
had already been provided for; wharves not within either
had not.   Whether there are any cases where the road passes
in front of wharves so situated is not material to the question
in hand.   The act was passed to meet such cases as might
occur.   The road had not been located nor the surveys made
when the act was passed; it was, therefore, proper that they
should be provided for, and the clause accordingly provides
for them.   The bays were " crossed" but not " cut off"
within the meaning of the act; that is to say, they were not
cut off from the navigable communication with the river
channel.   Draw-bridges were directed to keep that communi-
cation open and to prevent their being cut off.   If the bays
were not " cut off," the wharves within them were not, for
the same communication was open to them.   But wharves
not within the bays or inlets were " cut off" wherever the
railroad should pass between them and the channel; because
draw-bridges were not directed in those cases, and therefore
it was that the company was directed to extend or improve
them, for the purpose of keeping open the communication
between them and the channel.

We are asked by the plaintiff to interpret the clause in
question as if it read thus:  " And if there be any wharf or
dock within the bay so crossed by the railroad, the company
shall extend or so improve," &c.   But that is not the
language nor the import of the language of the provision.
The clause does not speak either expressly or by fair impli-
cation of a wharf or dock within the bay crossed by the
road.   On the contrary, the difference in the nature of the
remedy proposed for the mischief apprehended, as well as the
difference between the language of this clause and the lan-
guage of those which precede it, show that the clause in
question was intended as a separate and independent pro-

vision, applicable to cases not previously mentioned in the section, and not applicable to the case presented by the plaintiff.

A very serious practical difficulty would attend the extension of docks situated on bays, even if the defendants could be compelled to straighten the line of the river on the east side in all its length as between the riparian owners. The river line would be much less when made straight than upon the curves in the natural margin, and how and by whom shall this diminished front be divided and apportioned to the owners? So, two wharves upon different angles of the bay, upon being extended in right lines, might cross each other before reaching the line of the road, and if the wharves are not to be extended in right lines and at right angles with the shore where placed, who shall direct the course of the extension? Upon the true construction of the act, and for the reasons given, the judgment of the supreme court must be affirmed, with costs of the appeal.

JOHNSON and SELDEN, Js., gave no opinion.

Judgment affirmed.